Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd., #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACOB WHEELER,<br><br>Plaintiff,<br><br>vs.<br><br>SUNESIS PHARMACEUTICALS, INC., STEVE R. CARCHEDI, STEVEN B. KETCHUM, NICOLE ONETTO, HOMER L. PEARCE, DAVID C. STUMP, H. WARD WOLFF, and JAMES W. YOUNG,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Jacob Wheeler ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Sunesis Pharmaceuticals, Inc. ("Sunesis" or the "Company") and the members of Sunesis' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Sunesis will merge with Viracta Therapeutics, Inc. ("Viracta") through Sunesis' wholly owned subsidiary Sol Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On November 30, 2020, Sunesis and Viracta issued a joint press release announcing that they had entered into an Agreement and Plan of Merger and Reorganization, dated November 29, 2020 (the "Merger Agreement") to sell Sunesis to Viracta. Under the terms of the Merger Agreement, each outstanding share of Viracta common stock will be converted into the right to receive approximately 113,924,602 shares of Sunesis common stock, based on an assumed exchange ratio of 0.4017, subject to adjustment for a reverse stock split of Sunesis common stock to be implemented prior to the consummation of the Proposed Transaction, and further adjusted based on Sunesis' net cash in connection with the closing of the Proposed Transaction. Viracta stockholders are expected to own approximately 86% and Sunesis stockholders will own approximately 14% of the combined company.

3. On December 22, 2020, Sunesis filed a Form 424B3 proxy statement/prospectus (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Sunesis stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and Viracta's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, MTS Securities, LLC ("MTS"); and (ii) potential conflicts of interest faced by MTS and Company insiders.

Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Sunesis' public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Sunesis.

9. Defendant Sunesis is a Delaware corporation, with its principal executive offices located at 395 Oyster Point Boulevard, Suite 400, South San Francisco, California 94080. The Company is a biopharmaceutical company developing novel targeted inhibitors for the treatment of hematologic and solid cancers. Sunesis' common stock trades on the NASDAQ Global Select Market under the ticker symbol "SNSS."

10. Defendant Steve R. Carchedi ("Carchedi") has been a director of the Company since 2013.

11. Defendant Steven B. Ketchum ("Ketchum") has been a director of the Company since 2012.

12. Defendant Nicole Onetto ("Onetto") has been a director of the Company since 2019.

13. Defendant Homer L. Pearce ("Pearce") has been a director of the Company since 2006.

14. Defendant David C. Stump ("Stump") has been a director of the Company since 2006.

15. Defendant H. Ward Wolff ("Wolff") has been a director of the Company since 2018.

16. Defendant James W. Young ("Young") has been Non-Executive Chairman of the Board since April 2009 and a director of the Company since 2000. Defendant Young previously served as Executive Chairman of the Board from 2000 to April 2009, and as Chief Executive Officer ("CEO") from May 2000 to November 2003.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. Viracta is a precision oncology company targeting virus-associated malignancies. Viracta's proprietary investigational drug, nanatinostat, is currently being evaluated in combination with the antiviral agent valganciclovir as an oral combination therapy in a Phase 2 clinical trial for Epstein-Barr virus ("EBV")-positive lymphomas. Viracta is pursuing application of this inducible

synthetic lethality approach in other EBV-associated malignancies, such as nasopharyngeal carcinoma, gastric carcinoma, and other virus-related cancers.

19. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Sunesis.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20. Sunesis is a biopharmaceutical company focused on the development of novel targeted inhibitors for the treatment of hematologic and solid cancers. The Company's primary activities since incorporation have been conducting research and development internally and through corporate collaborators, in-licensing and out-licensing pharmaceutical compounds and technology, conducting clinical trials, and raising capital.

21. Sunesis is developing SNS-510, a PDK1 inhibitor licensed from Millennium Pharmaceuticals, Inc., a wholly-owned subsidiary of Takeda Pharmaceutical Company Limited. SNS-510 interaction with PDK1 inhibits both PI3K-dependent and independent signaling pathways integral to many malignancies, and PDK1 can also be overexpressed in breast, lung, prostate, hematologic and other cancers. Sunesis is conducting Investigational New Drug-enabling studies for SNS-510 and is addressing expected toxicities associated with PI3K inhibitors through dose regimen optimization and strategies that mitigate glucose dysregulation.

22. The Company's second program is vecabrutinib, a selective non-covalent inhibitor of Bruton's Tyrosine Kinase ("BTK"), with activity against both wild-type and C481S-mutated BTK, the most common mutation associated with resistance to covalent BTK inhibitors. In June 2020, Sunesis announced that it will not advance its non-covalent BTK inhibitor vecabrutinib in the planned Phase 2 portion of the Phase 1b/2 trial for adults with relapsed or refractory chronic lymphocytic leukemia ("CLL") and other B-cell malignancies. The decision was made after assessing the totality of the data including the 500 mg cohort, the highest dose studied in the trial, as Sunesis found

insufficient evidence of activity in the BTK inhibitor-resistant population to move the program into Phase 2. Sunesis has completed the Phase 1b portion of the Phase 1b/2 trial and is evaluating the best path forward for vecabrutinib.

23. Sunesis also has two partnered programs: DAY101 (formerly TAK-580) and vosaroxin. Sunesis has a license agreement with DOT Therapeutics-1 where Sunesis is eligible to receive potential pre-commercialization, event-based milestone payments and royalty payments on future sales of DAY101, when and if approved and commercialized. In addition, Sunesis has a license agreement with Denovo Biopharma where Sunesis is eligible to receive potential regulatory and commercial milestones, and royalties on future sales of vosaroxin, when and if approved and commercialized.

**<u>The Proposed Transaction</u>**

24. On November 30, 2020, Sunesis and Viracta issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> SOUTH SAN FRANCISCO and SAN DIEGO, Calif., Nov. 30, 2020 -- Sunesis Pharmaceuticals, Inc. (Nasdaq: SNSS) and Viracta Therapeutics, Inc., a privately held precision oncology company targeting virus-associated malignancies, today announced they have entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Viracta will combine with Sunesis in an all-stock transaction (the "Merger"). The merged company will focus on the advancement and expansion of Viracta's clinical stage, precision oncology pipeline targeting virus-associated malignancies, including Viracta's lead program for the treatment of Epstein-Barr virus (EBV)-positive relapsed/refractory lymphomas. Upon completion of the Merger, the combined company will operate under the name Viracta Therapeutics, Inc. and intends to be listed on the Nasdaq Global Market under the ticker symbol "VIRX."
>
> Viracta recently completed a $40 million Series E Preferred Stock equity financing led by aMoon, Israel's leading healthtech and life sciences venture fund, with participation from Taiwania Capital Management, Latterell Venture Partners, LifeSci Venture Partners and other existing investors.
>
> Concurrent with the execution of the Merger Agreement, Viracta entered into an agreement for the sale of common stock in a private placement with an investor syndicate of institutional accredited investors led by BVF Partners L.P., with participation from aMoon, Ridgeback Capital Management, Surveyor Capital (a

Citadel company), Logos Capital, Samsara Biocapital, Sectoral Asset Management, Janus Henderson Investors, LifeSci Venture Partners, and Serrado Capital LLC, as well as other institutional investors. The private placement is expected to result in gross proceeds to Viracta of approximately $65 million prior to the close of the Merger, subject to customary conditions. Upon the close of the Merger and related financing, the total cash balance of the combined company is expected to be approximately $120 million with an expected cash runway into 2024.

Viracta's lead program evaluates the all-oral combination of nanatinostat, its proprietary investigational drug, and valganciclovir in a Phase 2 clinical trial for the treatment of EBV-positive relapsed/refractory lymphomas. There are currently no approved therapies for EBV-associated cancers, which are responsible for over 140,000 deaths each year. Viracta's precision oncology and biomarker-driven combination product candidate targets EBV-positive cancer cells with an inducible synthetic lethality approach. Viracta plans to initiate a registration trial for the treatment of EBV-positive lymphoma in the first half of 2021, and also plans to initiate a Phase 1b/2 trial in EBV-positive solid tumors in 2021.

"This is a transformational event for Viracta, and I am very pleased to see the company brought forward into the public market," said Roger Pomerantz, M.D., F.A.C.P., Chairman of the Board of Directors of Viracta. "Importantly, Viracta's novel approach to targeting viral latency represents a completely new medical modality in the landscape of precision oncology, and today is the beginning of an important and exciting new phase in the company's evolution. EBV-induced malignancies are a high unmet medical need area, and the patients are waiting for novel therapies."

"After a thorough evaluation of strategic alternatives, the Board of Directors of Sunesis believes this merger is in the best interest of Sunesis' stockholders and has the potential to deliver near- and long-term value," said Dayton Misfeldt, Interim Chief Executive Officer of Sunesis. "This transaction will provide the resources for the combined company to leverage Viracta's scientific platform and pipeline to treat a range of virus-associated cancers and other serious diseases. Viracta shares our mission to develop important new targeted treatments for patients living with cancer, and we are enthusiastic about the prospect of carrying on that mission."

Ivor Royston, M.D., President and Chief Executive Officer of Viracta added, "The merger and our private financings represent a significant step in Viracta's growth as a late-stage development company. Our ongoing Phase 2 clinical trial for the treatment of EBV-positive lymphomas has produced encouraging efficacy and safety, and these transactions provide meaningful capital as we advance this program towards registration and expand our clinical pipeline. We look forward to building upon our clinical and corporate momentum to create shareholder and patient value, as we advance our important work to address the significant unmet needs in virus-associated malignancies."

**About the Merger**

> Under the terms of the Merger Agreement, pending stockholder approval of the transaction, Viracta will merge with a wholly owned subsidiary of Sunesis, and stockholders of Viracta will receive shares of newly issued Sunesis common stock. Viracta stockholders are expected to own approximately 86% and Sunesis stockholders will own approximately 14% of the combined company on a fully diluted basis using the treasury stock method. The percentage of the combined company that Sunesis stockholders will own as of the close of the Merger may be subject to adjustment based on Sunesis' net cash.
>
> The Merger Agreement has been unanimously approved by the Board of Directors of each company. The transaction is expected to close in the first quarter of 2021, subject to approvals by stockholders of each company and other customary closing conditions.
>
> MTS Health Partners, L.P. is serving as the financial advisor to Sunesis, and Cooley LLP is serving as legal counsel to Sunesis. SVB Leerink LLC and Evercore Group LLC served as placement agents in Viracta's private financings. Wilson Sonsini Goodrich & Rosati is serving as legal counsel to Viracta.
>
> **Management and Organization**
>
> The combined company will be led by Viracta's current management team and will be headquartered in Cardiff, California. The Board of Directors is expected to consist of seven members, including six members from Viracta's board and one member from Sunesis' board.

**<u>The Proxy Statement Contains Material Misstatements or Omissions</u>**

25. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Sunesis' stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

26. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and Viracta's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, MTS; and (ii) potential conflicts of interest faced by MTS and Company insiders.

***Material Omissions Concerning the Company's and Viracta's Financial Projections and MTS' Financial Analyses***

27. The Proxy Statement omits material information regarding the Company's financial projections.

28. The Proxy Statement sets forth:

> In the course of performing its review and analyses for rendering the opinion described above, MTS:
>
> - reviewed certain internal financial analyses and forecasts relating to Sunesis's business (which is primarily related to the Day One Agreement) prepared by and provided to MTS by the management of Sunesis (the "Sunesis Projections")[.]

Proxy Statement at 139. The Proxy Statement fails, however, to disclose Sunesis management's internal financial analyses and forecasts relating to Sunesis' business. To the extent the "Sunesis Projections" referenced on page 139 of the Proxy Statement are the "Liquidation Analysis" set forth on pages 150-151 of the Proxy Statement, the Proxy Statement must make this clear to stockholders.

29. With respect to the "Liquidation Analysis," the Proxy Statement fails to disclose: (i) Sunesis management's bases for the assumptions underlying the value ascribed to Sunesis' agreement with Day One Biopharmaceuticals, Inc., dated as of December 16, 2019 and a quantification thereof; and (ii) a quantification of the discount rate applied in valuing Sunesis' equity stake in a privately held company as well as a quantification of the inputs and assumptions underlying the discount rate.

30. In addition, with respect to the "Preliminary Analysis" forecast for Viracta, the Proxy Statement fails to disclose: (i) unlevered free cash flows over the projection period and all line items underlying unlevered free cash flow; and (ii) net income over the projection period and all line items underlying net income. Similarly, with respect to the Go-Forward Projections for Viracta, the Proxy Statement fails to disclose all line items underlying unlevered free cash flow.

31. The Proxy Statement also omits material information regarding MTS' financial analyses.

32. The Proxy Statement describes MTS' fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of MTS' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Sunesis' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on MTS' fairness opinion in determining whether to vote in favor of the Proposed Transaction.

33. With respect to MTS' *Discounted Cash Flow Analysis* of Viracta, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0%; (ii) quantification of the individual inputs and assumptions underlying the revenue achievement, cumulative regulatory probability of success, and peak penetration metrics used in the analysis; and (iii) MTS' basis for assuming no terminal value for Viracta.

34. Without such undisclosed information, Sunesis stockholders cannot evaluate for themselves whether the financial analyses performed by MTS were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which MTS' opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

35. The omission of this material information renders the statements in the "Certain Unaudited Financial Projections" and "Opinion of Sunesis's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning MTS' and Company Insiders' Potential Conflicts of Interest***

36. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by MTS.

37. The Proxy Statement sets forth that "Upon the consummation of the Merger, Sunesis will be obligated to pay to MTS Health Partners, L.P. a fee equal to approximately $2.0 million (up to $500,000 of which may be paid, at Sunesis's sole discretion, in the form of Sunesis Common Stock[.]" *Id.* at 148. The Proxy Statement fails, however, to disclose: (i) the circumstances under which Sunesis will elect to pay a portion of MTS' fee in Sunesis common stock; and (ii) whether Sunesis has determined to pay a portion of Sunesis' fee in common stock and if so, the value of the fee that will be paid in common stock.

38. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

39. The Proxy Statement also fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders.

40. The Proxy Statement sets forth:

> At the Effective Time, the combined company is expected to initially have a seven-member board of directors, comprised of (a) Ivor Royston, M.D., Michael Huang, M.S., M.B.A., Sam Murphy, Ph.D., Roger J. Pomerantz, M.D., Gur Roshwalb, M.D., and Thomas Darcy, each as a Viracta designee, and (b) **Nicole Onetto, M.D., as a Sunesis designee**, until their respective successors are duly elected or appointed and qualified or their earlier death, resignation or removal.

*Id.* at 157 (emphasis added). Yet, the Proxy Statement fails to disclose the details of any retention-related discussions and negotiations that occurred between Sunesis and Viracta executive officers or directors, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of proposals or indications of interest mentioned management or director retention or participation in the combined company.

41. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Sunesis' stockholders to understand potential conflicts of interest of

management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42. The omission of this information renders the statements in the "Opinion of Sunesis's Financial Advisor," "Background of the Merger," and "Directors of the Combined Company Following the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Sunesis stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

44. Plaintiff repeats all previous allegations as if set forth in full.

45. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or

omitted material facts, including material information about the Company's and Viracta's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by MTS, and MTS and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of Sunesis within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sunesis, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Sunesis' stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Sunesis, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Sunesis stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 21, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: /s/ *Joel E. Elkins*

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
-and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*